**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

OPTIMORPHIX, INC.,

*Plaintiff*,

v.

VMWARE, INC.,

*Defendant*.

C.A. No. 23-1146-MN

**JURY TRIAL DEMANDED**

**DEFENDANT VMWARE LLC'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S INDIRECT AND WILLFUL INFRINGEMENT CLAIMS FOR FAILURE TO STATE A CLAIM**

OF COUNSEL:

KILPATRICK, TOWNSEND & STOCKTON LLP

Kristopher L. Reed
2001 Ross Avenue, Suite 4400
Dallas, TX 75201
(214) 922-7143
kreed@ktslaw.com

Russell A. Korn
1100 Peachtree Street NE, Ste. 2800
Atlanta, GA, USA, 30309
(404) 815-6500
rkorn@ktslaw.com

Joshua H. Lee
1100 Peachtree Street NE, Ste. 2800
Atlanta, GA, USA, 30309
(404) 815-6500
jlee@ktslaw.com

Edward J. Mayle
1400 Wewatta St., Ste. 600
Denver, CO 80202
(303) 571-4000
tmayle@ktslaw.com

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com

*Attorneys for Defendant VMware LLC*

Dated: January 2, 2024

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........ ii
I. INTRODUCTION ........ 1
II. NATURE AND STAGE OF THE PROCEEDINGS ........ 1
III. SUMMARY OF ARGUMENT ........ 2
IV. STATEMENT OF RELEVANT FACTS ........ 2
V. LEGAL STANDARD ........ 3
VI. ARGUMENT ........ 5
A. OptiMorphix's Indirect Infringement Claims Should Be Dismissed ........ 5
B. OptiMorphix's Willful Infringement Claims Should Be Dismissed ........ 9
VII. CONCLUSION ........ 11

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Advanced Microscopy, Inc. v. Thermo Fisher Sci.*,
C.A. No. 15-1022-LPS (D. Del. Jan. 8, 2016) ........ 1

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 3, 4

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 3

*Bos. Sci. Corp. v. Nevro Corp.*,
560 F. Supp. 3d 837 (D. Del. 2021) ........ 9

*Carrum Techs., LLC v. BMW of N. Am., LLC*,
C.A. No. 18-1645-RGA, 2023 WL 1861150 (D. Del. Feb. 9, 2023) ........ 8

*CG Tech. Dev., LLC v. William Hill U.S. Holdco, Inc.*,
404 F. Supp. 3d 842 (D. Del. 2019) ........ 8

*Chalumeau Power Sys. LLC v. Alcatel-Lucent*,
C.A. No. 11-1175-RGA, 2012 WL 6968938 (D. Del. July 18, 2012) ........ 4

*Cleveland Med. Devices Inc. v. ResMed Inc.*,
C.A. No. 22-794-GBW, 2023 WL 6389628 (D. Del. Oct. 2, 2023) ........ 8, 10

*Commil USA, LLC v. Cisco Systems, Inc.*,
575 U.S. 632 (2015) ........ 4

*DoDots Licensing Sols. LLC v. Lenovo Holding Co., Inc.*,
C.A. No. 18-098-MN, 2018 WL 6629709 (D. Del. Dec. 19, 2018) ........ 3, 5, 7, 8, 9

*DoDots Licensing Sols. LLC v. Lenovo Holding Co., Inc.*,
C.A. No. 18-098-MN, 2019 WL 3069773 (D. Del. July 12, 2019) ........ 4, 7, 8

*Dynamic Data Technologies v. Google LLC*,
C.A. No. 19-1529-CFC-CJB, 2020 WL 1285852 (D. Del. Mar. 18, 2020) ........ 5, 6, 7, 10

*Global-Tech Appliances, Inc. v. SEB S.A.*,
563 U.S. 754 (2011) ........ 4

*Gortat v. Capala Bros.*,
257 F.R.D. 353 (E.D.N.Y. 2009) ........ 1

*Robocast, Inc. v. Netflix, Inc.*,
640 F. Supp. 3d 365 (D. Del. 2022) .......... 4, 5, 7, 10

*Salient Sys. Corp. v. Hawk Tech. Sys. LLC*,
C.A. No. 20-1558-CFC (D. Del., Feb. 19, 2021) .......... 1

*Tr. of the Univ. of Pa. v. Genentech, Inc.*,
C.A. No. 22-145-MN (D. Del.) .......... 1

*Välinge Innovation AB v. Halstead New England Corp.*,
C.A. No. 16-1082-LPS-CJB, 2018 WL 2411218 (D. Del. May 29, 2018) .......... 4, 6, 7

*VLSI Tech. LLC v. Intel Corp.*,
C.A. No. 18-966-CFC, 2019 WL 1349468 (D. Del. Mar. 26, 2019) .......... 10

*Wrinkl, Inc. v. Facebook, Inc.*,
C.A. No. 20-1345-RGA, 2021 WL 4477022 (D. Del. Sept. 30, 2021) .......... 11

*ZapFraud, Inc. v. Barracuda Networks, Inc.*,
528 F. Supp. 3d 247 (D. Del. 2021) .......... 8, 9, 10, 11

**Statutes**

35 U.S.C. § 271(b) .......... 2, 3

**Other Authorities**

Fed. R. Civ. P. 8(a)(2) .......... 3

Fed. R. Civ. P. 12(a)(4)(A) .......... 1

Fed. R. Civ. P. 12(b)(6) .......... passim

## I. INTRODUCTION

The Complaint filed by Plaintiff OptiMorphix, Inc. ("OptiMorphix") fails to state a claim of indirect infringement or willful infringement of any of the five asserted patents. Specifically, OptiMorphix does not sufficiently allege pre-suit knowledge by Defendant VMware LLC ("VMware")[1] of any of the asserted patents—a threshold requirement for both indirect and willful infringement. OptiMorphix's indirect and willful infringement claims should thus be dismissed.[2]

## II. NATURE AND STAGE OF THE PROCEEDINGS

OptiMorphix filed its Complaint for patent infringement against VMware on October 12, 2023. (D.I. 1.) OptiMorphix's Complaint alleges direct, induced, and willful infringement of U.S. Patent Nos. 7,031,314 ("the '314 Patent"); 7,586,871 ("the '871 Patent"); 7,616,559 ("the '559 Patent"); 7,136,353 ("the '353 Patent"); and 8,521,901 ("the '901 Patent") (collectively, "the Asserted Patents"). (*See id.*) VMware's time to respond to the Complaint has been extended to January 2, 2024. (*See* D.I. 7.)

---

[1] Since the filing of the Complaint, VMware, Inc. has been converted to VMware LLC.

[2] VMware respectfully notes that its Motion to Dismiss suspends the time to respond to claims in the Complaint that are not addressed by the Motion, consistent with this District's precedent. *See* Fed. R. Civ. P. 12(a)(4)(A); *see, e.g.*, *Tr. of the Univ. of Pa. v. Genentech, Inc.*, C.A. No. 22-145-MN (D. Del.) (partial motion to dismiss filed at D.I. 12; no Answer filed) (Ex. A); *Salient Sys. Corp. v. Hawk Tech. Sys. LLC*, C.A. No. 20-1558-CFC (D. Del., Feb. 19, 2021) (partial motion to dismiss filed at D.I. 15, no Answer filed) (Ex. B); *Advanced Microscopy, Inc. v. Thermo Fisher Sci.*, C.A. No. 15-1022-LPS (D. Del. Jan. 8, 2016) (partial motion to dismiss filed at D.I. 12, no Answer filed) (Ex. C); *see also Gortat v. Capala Bros.*, 257 F.R.D. 353, 366 (E.D.N.Y. 2009) ("[F]iling a partial motion to dismiss will suspend the time to answer those claims or counterclaims that are not subject to the motion. If the opposite rule controlled and partial motions to dismiss did not suspend a party's obligation to reply to additional claims, the result would be 'a procedural thicket' of piecemeal answers that would poorly serve judicial economy." (internal citations omitted)).

## III. SUMMARY OF ARGUMENT

OptiMorphix's indirect and willful infringement claims should be dismissed as to all five of the Asserted Patents because OptiMorphix fails to sufficiently allege that VMware had the requisite pre-suit knowledge of any of the Asserted Patents.

## IV. STATEMENT OF RELEVANT FACTS

OptiMorphix's Complaint alleges VMware indirectly infringes each of the five Asserted Patents "by actively inducing infringement under 35 U.S.C. § 271(b)."[3] (D.I. 1, ¶¶ 74, 98, 126, 150, 172.) In support of its claims, OptiMorphix's Complaint alleges that "VMware has had knowledge of [each Asserted Patent] since at least service of this Complaint or shortly thereafter, and VMware knew of [each Asserted Patent] and knew of its infringement, including by way of this lawsuit." (D.I. 1, ¶¶ 75, 99, 127, 151, 173.)

But OptiMorphix's allegations with respect to VMware's alleged induced infringement are focused on activity prior to the filing of the Complaint. For each Asserted Patent, OptiMorphix's Complaint alleges that—prior to the filing of the Complaint—"VMware ***intended*** to induce patent infringement by third-party customers and users of the [accused products] and ***had*** knowledge that the inducing acts would cause infringement or ***was*** willfully blind to the possibility that its inducing acts would cause infringement." (D.I. 1, ¶¶ 76, 100, 128, 152, 174.) (emphasis added).

OptiMorphix's Complaint, however, is devoid of any allegation that VMware had knowledge of any Asserted Patent—let alone infringement of any patent by third-party customers or users of the accused products—prior to the filing of the Complaint. At most, OptiMorphix's Complaint alleges that each Asserted Patent "is well-known within the industry as demonstrated by multiple citations to [each Asserted Patent] in published patents and patent applications

---

[3] OptiMorphix's Complaint does not allege any contributory infringement of any Asserted Patent by VMware. (*See generally* D.I. 1.)

assigned to technology companies and academic institutions." (D.I. 1, ¶¶ 77, 101, 129, 153, 175.) In particular, OptiMorphix's Complaint alleges that one or more of the Asserted Patents has been cited in published patents and patent applications assigned to companies such as Alphabet Inc., Broadcom Limited, Cisco Technology, Inc., Microsoft Corporation, Oracle Corporation, Qualcomm, Inc., and others. (D.I. 1, ¶¶ 21, 28, 36, 45, 53.) But even under those tenuous allegations, OptiMorphix's Complaint fails to allege that any Asserted Patent has been cited in any published patent or patent application assigned to VMware. (*See id.*)

Nonetheless, OptiMorphix's Complaint alleges that "VMware is infringing [each Asserted Patent] in a manner best described as willful, wanton, malicious, in bad faith, deliberate, consciously wrong, flagrant, or characteristic of a pirate." (D.I. 1, ¶¶ 77, 101, 129, 153, 175.)

## V.  LEGAL STANDARD

To state a claim on which relief can be granted, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "In ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept all well-pleaded factual allegations in the complaint as true and view them in the light most favorable to the plaintiff." *DoDots Licensing Sols. LLC v. Lenovo Holding Co., Inc.*, C.A. No. 18-098-MN, 2018 WL 6629709, at *1 (D. Del. Dec. 19, 2018). But the Court need not accept as true "bald assertions, unsupported conclusions or unwarranted inferences." *Id.* (citation omitted).

Dismissal under Rule 12(b)(6) is appropriate if a complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This plausibility standard obligates a plaintiff to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Instead, the pleadings must provide sufficient factual allegations to allow the Court to "draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. If they do not, the claim should be dismissed. *Id.*

Allegations of indirect infringement require pre-suit knowledge of the patent; "actual, not constructive, knowledge [is] required." *Chalumeau Power Sys. LLC v. Alcatel-Lucent*, C.A. No. 11-1175-RGA, 2012 WL 6968938, at *1 (D. Del. July 18, 2012) (citing *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 765–66 (2011)). Indeed, indirect infringement "requires knowledge of the patent in suit and knowledge of patent infringement." *Commil USA, LLC v. Cisco Systems, Inc.*, 575 U.S. 632, 639 (2015). As such, "to state a claim of inducement sufficient to withstand a motion to dismiss, a plaintiff must plead facts that plausibly support an inference that the accused inducer 'specifically intended [another] to infringe the [patent] and knew that the [induced] acts constituted infringement." *DoDots Licensing Sols. LLC v. Lenovo Holding Co., Inc.*, C.A. No. 18-098-MN, 2019 WL 3069773, at *2 (D. Del. July 12, 2019) (citation omitted).

Likewise, to plead willful infringement, "the patentee must plead facts plausibly suggesting that the accused infringer had prior knowledge of the patent(s)-in-suit." *Välinge Innovation AB v. Halstead New England Corp.*, C.A. No. 16-1082-LPS-CJB, 2018 WL 2411218, at *12 (D. Del. May 29, 2018), *report and recommendation adopted*, 2018 WL 11013901 (D. Del. Nov. 6, 2018). Indeed, "[o]ne cannot infringe a patent with the requisite state of mind for this type of claim if one does not know of that patent's existence." *Id.* Thus, to sufficiently plead willful infringement, "[t]he complaint must allege that the accused infringer knew of the asserted patent, and knowingly or intentionally infringed the patent after acquiring that knowledge." *Robocast, Inc. v. Netflix, Inc.*, 640 F. Supp. 3d 365, 371 (D. Del. 2022).

## VI. ARGUMENT

### A. OptiMorphix's Indirect Infringement Claims Should Be Dismissed

OptiMorphix's inducement claims fail because OptiMorphix fails to sufficiently allege pre-suit knowledge of any Asserted Patent. OptiMorphix does not allege that it sent a pre-suit notice letter or otherwise informed VMware of any Asserted Patent before filing suit, let alone any alleged infringement of the Asserted Patents by any action of VMware. Instead, OptiMorphix alleges that "VMware has had knowledge of [each Asserted Patent] ***since at least service of this Complaint or shortly thereafter***, and VMware knew of [each Asserted Patent] and knew of its infringement, including ***by way of this lawsuit***." (D.I. 1, ¶¶ 75, 99, 127, 151, 173.) (emphasis added).

OptiMorphix's allegations are "deficient" in this regard. *DoDots*, 2018 WL 6629709, at *4 ("Plaintiff's allegations regarding knowledge are deficient. There are no factual allegations that suggest Defendants possessed the requisite knowledge of infringement of any of the Patents-in-Suit prior to filing the original complaint."). As in *DoDots*, there are no factual allegations in OptiMorphix's Complaint that suggest that VMware "possessed the requisite knowledge of infringement of any of the Patents-in-Suit ***prior*** to filing the [] complaint." *Id.* (emphasis added); *Robocast*, 640 F. Supp. 3d at 370–72 (granting motion to dismiss claims for induced infringement given plaintiff's failure to sufficiently plead pre-suit knowledge of the asserted patents).

OptiMorphix's vague allegations regarding the purported "well-known" nature of each Asserted Patent "within the industry" based on the patents' citations in published patents and patent applications assigned to "technology companies" fail to cure the deficiency in OptiMorphix's allegations. (D.I. 1, ¶¶ 77, 101, 129, 153, 175) Courts in this District have consistently found similar allegations insufficient to survive a Rule 12(b)(6) motion to dismiss.

For instance, in *Dynamic Data Technologies v. Google LLC*, the plaintiffs—like OptiMorphix here—"allege[d] that the patents-in-suit were well-known in the video processing

industry (the relevant field []) and, relatedly, that various third-party companies have cited to the patents-in-suit and/or the underlying patent applications when those companies were prosecuting their own patent applications." C.A. No. 19-1529-CFC-CJB, 2020 WL 1285852, at *2 (D. Del. Mar. 18, 2020), *report and recommendation adopted sub nom.*, 2020 WL 3103786 (D. Del. June 11, 2020). The court held this allegation was insufficient to plead that the specific defendant had pre-suit knowledge of the patents-in-suit. *Id.* Further, the court held this allegation does not adequately plead that the defendant "would then have known that it was infringing each of the patents-in-suit," in any event. *Id.* In sum, the court held the complaint "does not articulate why, in the absence of having received a pre-suit notice letter explaining why the accused products infringed the patents-in-suit, [the defendant] would have nevertheless understood (prior to being served with the Complaint) that such infringement had been occurring." *Id.*

In *Välinge Innovation AB v. Halstead New England Corp.*, the plaintiff likewise based its contention regarding the defendant's pre-suit knowledge of the asserted patents on an allegation that it is "well known in the flooring products industry that [plaintiff] has a substantial patent portfolio covering flooring products." C.A. No. 16-1082-LPS-CJB, 2017 WL 5196379, at *3 (D. Del. Nov. 9, 2017), *report and recommendation adopted sub nom.*, 2018 WL 11013902 (D. Del. Jan. 10, 2018). Presented with a Rule 12(b)(6) motion to dismiss by the defendant, the court held it was "too far of a leap to conclude" based on that allegation "that it is plausible that [the defendant] knew of every patent in that [] portfolio (including the asserted patents) and what it would take to infringe those patents." *Id.*

Like in *Dynamic Data* and *Välinge*, OptiMorphix's allegations here that the Asserted Patents are "well-known within the industry" because third-party companies have cited to the patents when those companies were prosecuting their own patent applications (D.I. 1, ¶¶ 77, 101,

129, 153, 175) are insufficient for the Court to draw a reasonable inference that VMware had pre-suit knowledge of each Asserted Patent. *See, e.g.*, *Dynamic Data*, 2020 WL 1285852, at *2; *Välinge Innovation*, 2017 WL 5196379, at *3. Further, such allegations are also insufficient for the Court to draw a reasonable inference that VMware knew that any acts it was allegedly inducing constituted infringement of each of the Asserted Patents as also required to plead inducement. *See, e.g.*, *Dynamic Data*, 2020 WL 1285852, at *2; *see DoDots*, 2019 WL 3069773, at *2.

Given that OptiMorphix's Complaint fails to plead sufficient allegations regarding any pre-suit knowledge of the Asserted Patents by VMware, OptiMorphix's claims for inducement should be dismissed in their entirety—*i.e.*, as to pre-suit inducement and post-suit inducement. Indeed, in *DoDots*, this Court dismissed claims for induced infringement in a First Amended Complaint given the plaintiff's failure to plead pre-suit knowledge of the asserted patents. *DoDots*, 2018 WL 6629709, at *4. The Court did so regardless of whether the plaintiff's allegations of inducement were based on "pre-suit conduct, or … activities after the filing of the original complaint," because "[t]here are no factual allegations that suggest [d]efendants possessed the requisite knowledge of infringement of any of the [p]atents-in-[s]uit prior to filing the original complaint." *Id.* Likewise, the court in *Robocast* similarly granted a defendant's motion to dismiss claims for induced infringement—in their entirety—given the plaintiff's failure to plead pre-suit knowledge of the asserted patents. *Robocast*, 640 F. Supp. 3d at 371–72. The same result is warranted here given the absence of any factual allegations of VMware's knowledge of infringement of the Asserted Patents prior to the filing of OptiMorphix's Complaint.

At a minimum, courts in this District agree that "any claim of ***pre-suit*** inducement must be dismissed" where the complaint does not sufficiently plead that the defendant possessed the requisite knowledge of the asserted patent(s) prior to the filing of the complaint—as is the case

here. *DoDots*, 2019 WL 3069773, at *4 ("[T]he Court will not allow Plaintiff to pursue a claim of pre-suit inducement where there are insufficient allegations to render that claim plausible."); *see, e.g.*, *CG Tech. Dev., LLC v. William Hill U.S. Holdco, Inc.*, 404 F. Supp. 3d 842, 852 (D. Del. 2019) (granting motion to dismiss claims for pre-suit induced infringement given plaintiff's failure to sufficiently plead pre-suit knowledge of the asserted patents); *Cleveland Med. Devices Inc. v. ResMed Inc.*, C.A. No. 22-794-GBW, 2023 WL 6389628, at *4, *7 (D. Del. Oct. 2, 2023) (same); *Carrum Techs., LLC v. BMW of N. Am., LLC*, C.A. No. 18-1645-RGA, 2023 WL 1861150, at *3 (D. Del. Feb. 9, 2023) (same); *see also DoDots*, 2019 WL 3069773, at *4 (noting courts in this District agree it is appropriate to, at a minimum, "par[e] inducement claims down by time period when Plaintiff fails to adequately plead pre-suit inducement").

And while courts in this District may be somewhat "divided" over whether the filing of a complaint itself can provide sufficient knowledge for ***post-suit*** induced infringement (*see ZapFraud, Inc. v. Barracuda Networks, Inc.*, 528 F. Supp. 3d 247, 249–50 (D. Del. 2021)), OptiMorphix's Complaint here fails to provide the requisite knowledge for any post-suit inducement for the same reasons this Court found in *DoDots*, as discussed above. *See Dodots*, 2018 WL 6629709, at *4. This is especially true given OptiMorphix attempts to plead inducement based on pre-suit conduct of VMware—*i.e.*, conduct of VMware prior to any knowledge of the Asserted Patents. (D.I. 1, ⁋⁋ 76, 100, 128, 152, 174.) For example, OptiMorphix's Complaint alleges that, as of the filing of the Complaint, VMware "***performed*** the acts that constitute induced infringement"; "***was*** aware that the normal and customary use of the accused products would infringe" the Asserted Patents; "***intended*** to induce patent infringement"; and "***engaged*** in such inducement to promote the sales of the [accused products]." (*Id.*) (emphasis added). Such alleged "pre-suit conduct" by VMware—conduct that occurred prior to VMware gaining knowledge of

the Asserted Patents via this lawsuit—cannot plausibly support an inference that VMware has induced infringement since the filing of the Complaint. *See DoDots*, 2018 WL 6629709, at *4.

Moreover, as Chief Judge Connolly has explained, "[a] complaint itself cannot be the source of the knowledge required to sustain claims of induced infringement." *ZapFraud*, 528 F. Supp. 3d at 250. Indeed, "[t]he purpose of a complaint is to obtain relief from an existing claim and not to create a claim." *Id.* at 251; *see also Bos. Sci. Corp. v. Nevro Corp.*, 560 F. Supp. 3d 837, 844 (D. Del. 2021) ("The limited authority vested in our courts by the Constitution and the limited resources made available to our courts by Congress counsel against encouraging plaintiffs to create claims by filing claims."). Thus, it is "neither wise nor consistent with principles of judicial economy to allow court dockets to serve as notice boards for future legal claims for indirect infringement." *ZapFraud*, 528 F. Supp. 3d at 251. As such, OptiMorphix's Complaint here "fails to state a claim for indirect patent infringement"—as to both pre-suit and post-suit inducement—"where [VMware's] alleged knowledge of the asserted patents is based solely on the content of that complaint." *Id.* at 252; *see DoDots*, 2018 WL 6629709, at *4 (dismissing claims for inducement due to lack of requisite pre-suit knowledge of asserted patents prior to complaint).

Therefore, there should be no question that OptiMorphix's claims of ***pre-suit*** inducement of the five Asserted Patents should be dismissed pursuant to Rule 12(b)(6). And for the reasons discussed above, OptiMorphix's claims of ***post-suit*** inducement should be dismissed pursuant to Rule 12(b)(6) as well.

**B. OptiMorphix's Willful Infringement Claims Should Be Dismissed**

For similar reasons, OptiMorphix's willful infringement claims fail because OptiMorphix fails to sufficiently allege pre-suit knowledge of any Asserted Patent. Indeed, and once again, OptiMorphix's Complaint primarily alleges that "VMware has had knowledge of [each Asserted

Patent] ***since at least service of this Complaint or shortly thereafter***." (D.I. 1, ⁋⁋ 75, 99, 127, 151, 173.) (emphasis added). This is insufficient to state a claim for willfulness.

Courts in this District repeatedly have held that "the operative complaint in a lawsuit fails to state a claim for willfulness-based enhanced damages under § 284 where the defendant's alleged knowledge of the asserted patents is based solely on the content of that complaint." *ZapFraud*, 528 F. Supp. 3d at 252; *see, e.g.*, *Robocast*, 640 F. Supp. 3d 365 (granting motion to dismiss claims of willful infringement given plaintiff's failure to sufficiently plead pre-suit knowledge of the asserted patents); *Cleveland Med. Devices*, 2023 WL 6389628, at *6 (same); *Dynamic Data*, 2020 WL 1285852, at *3 (same); *VLSI Tech. LLC v. Intel Corp.*, C.A. No. 18-966-CFC, 2019 WL 1349468, at *2 (D. Del. Mar. 26, 2019) (same).

For the same reasons discussed above with respect to requisite pre-suit knowledge for inducement, OptiMorphix's vague allegations regarding the purported "well-known" nature of each Asserted Patent "within the industry" based on the patents' citations in published patents and patent applications assigned to "technology companies" (D.I. 1, ⁋⁋ 77, 101, 129, 153, 175) fail to cure the deficiency in OptiMorphix's willfulness allegations. For example, in *Dynamic Data*, the court dismissed the plaintiff's claim for willful infringement, finding that the plaintiff's allegations that "the patents-in-suit were well-known in the video processing industry" (because "various third-party companies have cited to the patents-in-suit and/or the underlying patent applications when those companies were prosecuting their own patent applications") were insufficient to allow for a plausible allegation of the specific defendant's requisite pre-suit knowledge of the patents-in-suit. 2020 WL 1285852, at *2–3.

Dismissal of OptiMorphix's claims of willful infringement in their entirety—as to both pre-suit and post-suit causes of action—is warranted here for the same reason. "[W]hen there is no

pre-suit knowledge, it is not sufficient merely to allege the defendant has knowledge since the filing of the [] complaint and has not ceased doing whatever the infringing behavior is alleged to be." *Wrinkl, Inc. v. Facebook, Inc.*, C.A. No. 20-1345-RGA, 2021 WL 4477022, at *7 (D. Del. Sept. 30, 2021). Put another way, the filing of the Complaint by OptiMorphix alone does not provide "notice" sufficient to form the basis for a willfulness allegation. *Id.* (holding willfulness allegations "entirely based on post-suit conduct . . . are not plausible."); *see ZapFraud*, 528 F. Supp. 3d at 251–52 ("The policies that govern our patent system make the requirement of pre-suit knowledge of the asserted patents especially warranted for enhanced damages claims. . . . The purpose of enhanced damages is to punish and deter bad actors from egregious conduct, not to provide a financial incentive for opportunistic plaintiffs to spring suits for patent infringement on innocent actors who have no knowledge of the existence of the asserted patents.").

Given that OptiMorphix's Complaint is devoid of any sufficient allegations of pre-suit knowledge of the Asserted Patents by VMware, as discussed above, OptiMorphix's claims of willful infringement of the five Asserted Patents should be dismissed pursuant to Rule 12(b)(6).

## VII. CONCLUSION

For the foregoing reasons, VMware requests that the Court grant its motion to dismiss as to each of OptiMorphix's claims of inducement and willful infringement for all Asserted Patents.

Dated: January 2, 2024

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Anne Shea Gaza*

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com

*Attorneys for Defendant VMware LLC*

OF COUNSEL:

KILPATRICK, TOWNSEND & STOCKTON LLP
Kristopher L. Reed
2001 Ross Avenue, Suite 4400
Dallas, TX 75201
(214) 922-7143
kreed@ktslaw.com

Russell A. Korn
1100 Peachtree Street NE, Ste. 2800
Atlanta, GA, USA, 30309
(404) 815-6500
rkorn@ktslaw.com

Joshua H. Lee
1100 Peachtree Street NE, Ste. 2800
Atlanta, GA, USA, 30309
(404) 815-6500
jlee@ktslaw.com

Edward J. Mayle
1400 Wewatta St., Ste. 600
Denver, CO 80202
(303) 571-4000
tmayle@ktslaw.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on January 2, 2024, a copy of the foregoing document was served on the counsel listed below in the manner indicated:

**BY E-MAIL**

Stephen B. Brauerman
Ronald P. Golden III
BAYARD, P.A.
600 N. King Street, Suite 400
P.O. Box 25130
Wilmington, DE 19801
(302) 655-5000
sbrauerman@bayardlaw.com
rgolden@bayardlaw.com

Dorian S. Berger
Daniel P. Hipskind
Erin E. McCracken
BERGER & HIPSKIND LLP
9538 Brighton Way, Ste. 320
Beverly Hills, CA 90210
dsb@bergerhipskind.com
dph@bergerhipskind.com
eem@bergerhipskind.com

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Anne Shea Gaza*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com

*Attorneys for Defendant VMware LLC*